IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEBORAH SWINNEY, as surviving
spouse and administrator of the
estate of MICHAEL ANDRE
SWINNEY,

       Plaintiff,

CIVIL ACTION FILE NO:
1:09-CV-0585-JEC

v.

SCHNEIDER NATIONAL CARRIERS,
INC., and ALLEN DOUGLAS
LEDFORD,

       Defendants.

## **ORDER and OPINION**

This case is presently before the Court on defendants' Renewed
Motion for Summary Judgment [111] and defendants' Objection to the
Affidavit of Harry Edmondson [118]. The Court has reviewed the
record and the arguments of the parties and, for the reasons set out
below, concludes that defendants' Renewed Motion for Summary Judgment
[111] should be **GRANTED in part** and **DENIED in part** and defendants'
Objection to the Affidavit of Harry Edmundson [118] should be
**SUSTAINED**.

## BACKGROUND

This action arises from an accident that occurred on I-285 in June of 2008. Plaintiff is the surviving spouse of Michael Swinney, who died in the accident. (Compl. at ¶¶ 1-2, attached to Notice of Removal [1] as Ex. A.) Defendant Allen Ledford allegedly caused the accident in the course of his employment as a truck driver for defendant Schneider National Carriers, Inc. ("Schneider"). (*Id.* at ¶¶ 3-4.) The case was removed from Fulton County Superior Court on the grounds of diversity jurisdiction. (Notice of Removal [1].)

Many of the facts surrounding the accident are in dispute. Construing the evidence in favor of plaintiff, Swinney's car broke down in the far right travel lane of I-285 East sometime before 4:00 a.m. on the morning of June 21, 2008. (*See* Pl.'s Statement of Material Facts ("PSMF") [114] at ¶¶ 2, 12 and Stanley Dep. [111] at 22-39.) Although the area was poorly lit, Swinney's headlights were on and his car was visible for at least 250 feet. (PSMF [114] at ¶¶ 3, 14-16.)

The accident occurred when Ledford's Schneider truck collided with Swinney's stopped car. (Defs.' Statement of Material Facts ("DSMF") [111] at ¶ 10 and Pl.'s Initial Disclosures [65] at 5.) As a result of the collision, Swinney was struck either by Ledford's truck or by his own car, which had been set in motion by Ledford's truck. (Harper Dep. [111] at 30.) Following the collision,

2

Swinney's body was thrown onto the roadway and run over by several other vehicles. (Stanley Dep. [111] at 42.) The medical examiner concluded that Swinney died on account of being "struck multiple times by multiple objects." (Smith Dep. [111] at 17-18.)

During the subsequent investigation, Ledford initially told the police that Swinney's car "c[ame] around him on the right shoulder" and "jump[ed] out in front of him, causing him to hit the vehicle." (Stanley Dep. [111] at Ex. 1.) After learning that Swinney's car was in fact stopped at the time of the collision, Ledford changed his story. (Ledford Dep. [116] at 73-75.) At his deposition, Ledford explained that he didn't see Swinney's car because he was looking in his rearview mirror. (*Id.* at 71-76.) Witness LeeMurray White, who had been driving behind Ledford for a few miles, offered another explanation. (PSMF [114] at ¶ 25.) He testified that Ledford had been weaving among lanes just before the accident, as if he was dozing off. (*Id.*)

In addition to Ledford's culpability for the accident, a key point of dispute between the parties is where Swinney was located at the time of the collision. Plaintiff, in reliance upon her expert Harry Edmondson, contends that Swinney was standing in front of the car when it was struck by Ledford's truck. (Pl.'s Resp. [113] at 7-8.) Based on the damage to Swinney's car, and the fact that the car did not hit any other object, Edmondson opines that "more likely than

3

not, Mr. Swinney was standing in front of the [car] and . . . it was his body that caused the damage to the [car]." (Edmondson Aff. [113] at ¶¶ 16-17, 19.) More specifically, Edmondson believes that upon its impact with Ledford's truck, the car was pushed onto Swinney's body, forcing the hood of the car inward and causing Swinney to slam into the windshield. (*Id.* at ¶¶ 18,20.) After hitting the windshield, Edmondson theorizes that Swinney "either rolled or flipped onto the roadway or into [Ledford's truck]." (*Id.* at ¶ 20.)

Unfortunately, none of the investigating officers could corroborate Edmondson's opinions. (DSMF [111] at ¶ 16.) Investigating Officer Harper stated that he believes the right side of Ledford's truck ran over Swinney's body and "twisted him up pretty badly." (Harper Dep. [111] at 30.) However, even the Georgia State Patrol's special crash reconstruction team could not conclusively determine where Swinney was located when the accident occurred or whether he died as a result of an impact with his own car, Ledford's truck, or another vehicle. (Barnes Dep. [116] at 16-18 and Smith Dep. [111] at 17-18.)

An autopsy revealed the presence of both alcohol and cocaine in Swinney's system on the night of the accident. (DSMF [111] at ¶¶ 9, 32-34.) Swinney's blood alcohol concentration was 0.12 grams, above the maximum legal level of .08 grams. (Defs.' Supplemental Initial Disclosures [45] at 3.) Swinney's wife later informed the

4

investigating officers that Swinney had been at a party the previous night and was running late for work on the morning of the accident. (*Id.*) Nevertheless, there is no evidence that the alcohol or drugs in Swinney's system contributed to the accident. (PSMF [114] at ¶¶ 8-9.)

Plaintiff alleges that Ledford's negligent driving caused Swinney's death. (Compl. [1] at ¶¶ 7-8.) In her complaint, plaintiff asserts a negligence claim against both Ledford and his employer, Schneider, for Swinney's wrongful death. (*Id.*) Assuming that she prevails on her negligence claim, plaintiff seeks damages on behalf of herself, for the value of Swinney's life, and on behalf of Swinney, for pain and suffering and pre-impact fright and shock. (*Id.* at 3.)

Defendants have filed an objection to the expert opinion of Harry Edmondson and a renewed motion for summary judgment.[1] (Defs.' Obj. [118] and Renewed Mot. for Summ. J. [111].) Assuming that Edmondson's testimony is excluded, defendants argue that summary judgment should be granted because there is no evidence to show proximate cause, which is an essential element of plaintiff's negligence claim. (Defs.' Br. in Supp. of Summ. J. ("Defs.' Br.")

---

[1] The Court denied defendants' initial motion for summary judgment without prejudice after both sides filed motions for leave to supplement the record with additional argument and evidence. (Order [110] at 1.)

[111] at 12-16.)  In addition, defendants contend that they are entitled to partial summary judgment on the issues of (1) pre-impact damages for Swinney's fright, shock, pain and suffering and (2) Swinney's negligence *per se.* (*Id.* at 16-22.)

**DISCUSSION**

## I.  Defendants' Objection To Edmondson's Testimony

Defendants argue that Edmondson's opinion should be excluded under Rule 702 of the Federal Rules of Evidence.  (Defs.' Obj. [118].)  Rule 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

FED. R. EVID. 702.  Pursuant to Rule 702, expert testimony is only admissible if:  (1) the expert is qualified to testify competently, (2) his methodology is reliable, and (3) the testimony will assist the trier of fact to understand the evidence or determine a fact in issue in the case.  *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1309 (11th Cir. 1999).

The proponent of expert testimony has the burden of showing that the testimony complies with Rule 702.  *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.,* 402 F.3d 1092, 1108 (11th Cir. 2005).  To meet that burden, plaintiff must demonstrate that

6

Edmondson's proffered opinion satisfies each of the above prongs. *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010). Assuming the basic requirements of Rule 702 are satisfied, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness" of plaintiff's testimony. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). Rather, "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible'" expert testimony. *Id.*

## A. Edmondson's Qualifications

As an initial matter, the Court finds that Edmondson is qualified by his education and experience to render an expert opinion in this case. Edmondson has a degree in mechanical engineering from Georgia Tech. (Edmondson Resume [65] at 14.) He has worked as a professional engineer for forty years and has extensive experience in the fields of forensic engineering and accident reconstruction. (*Id.*) During his career, Edmondson has taken numerous courses in accident reconstruction and conducted multiple computerized crash simulations. (Pl.'s Resp. to Defs.' Obj. [120] at 2 and Edmondson Aff. [113] at ¶¶ 3-4.)

7

**B.   Reliability**

Nevertheless, the Court agrees with defendants that Edmondson's proffered opinions are unreliable.   In ascertaining the reliability of an expert's opinion, it is the district court's role to act as a "gatekeeper[]" to ensure that groundless or speculative testimony is not admitted.  *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).  The Supreme Court has identified several non-exclusive factors as relevant to the inquiry, including:  (1) whether the expert's methodology can be and has been tested, (2) whether the methodology has been subjected to peer review and publication, (3) the known or potential rate of error of the particular scientific technique, and (4) whether the expert's technique is generally accepted in the scientific community.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593-94 (1993).  *See also Quiet Tech.*, 326 F.3d at 1341 (applying the *Daubert* factors).

In this case, there is no rational basis upon which the Court can apply the above factors because there is no discernible methodology underlying Edmondson's opinions.   In his affidavit, Edmondson conclusively avers that his opinions are based on unspecified "actual testing" and his review of scene photographs, video films, and depositions.  (Edmondson Aff. [113] at ¶ 5.)  But it is not clear from the affidavit which, if any, of those aids were employed in forming his opinions.  (*Id.* at ¶¶ 16-20.)  Indeed,

8

Edmondson's affidavit is little more than a summary of what he presumes to have happened on the morning of the accident. (*Id*.) As such, the affidavit clearly is insufficient to meet plaintiff's burden under Rule 702. *See Cook*, 402 F.3d at 1113 ("Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough.").

Neither does Edmondson's engineering report supply the necessary details. (Engineering Report [65].) Based on the report, Edmondson's methodology appears to have consisted entirely of looking at Swinney's car and generally describing the damage to the car that likely resulted from the accident. (*Id*.) There are no facts in the report to suggest that Edmondson performed any test or reviewed any objective data to verify that the damage to the car was caused by its collision with Swinney, or even that the damage was consistent with an impact on a human body. (*Id*.) In the absence of any additional evidence or explanation, Edmondson's report does not reliably establish Swinney's location at the time of the accident or the immediate cause of his death.

In response to defendants' objection, plaintiff suggests that Edmondson's general experience in the field of accident reconstruction renders his opinion reliable. (Pl.'s Resp. to Defs.' Obj. [120] at 8-9.) However, plaintiff does not explain why

9

Edmondson's experience is a sufficient basis for his opinion, or how his experience has been reliably applied to the facts of this particular case. *See* FED. R. EVID. 702, Advisory Committee Notes (2000)("If the witness is relying solely or primarily on experience, then [he] must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'"). Nor does Edmondson provide any additional details as to how his general experience in the field of accident reconstruction supports his opinions in this case. (Edmondson Aff. [113] and Engineering Report [65].)

Alternatively, plaintiff attempts to bypass the reliability question by suggesting that defendants are precluded from objecting to Edmondson's opinion because they failed to depose him during discovery. (Pl.'s Resp. to Obj. [120] at 10-11.) This argument is meritless. All of the evidence in the record suggests that defendants would have deposed Edmondson if they had not been frustrated by plaintiff in their attempts to schedule the deposition. Plaintiff cancelled two scheduled depositions for Edmondson in December, 2009, and subsequently failed to provide an alternative date. (Dep. Notices [71] and [81] and Dixon Aff. [121] at ¶¶ 3-4.) Defendants finally abandoned their effort to depose Edmondson after

10

plaintiff indicated in the initial summary judgment briefing that she did not intend to rely on Edmondson's opinion. (Dixon Aff. at ¶ 5.)

In any case, even assuming that defendants were somehow derelict in their effort to depose Edmondson, their failure does not relieve plaintiff of her burden of establishing the reliability of Edmondson's opinions under Rule 702. *See Hendrix*, 609 F.3d at 1194 (the "proponent of . . . expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each prong" of Rule 702) and *Cook*, 402 F.3d at 1108 (holding same). Based on the materials that are in the record, plaintiff clearly has failed to meet her burden as to reliability. Accordingly, defendants' objection [118] is **SUSTAINED**. Edmondson's testimony will not be admitted into evidence in this case.

## II. Defendants' Motion For Summary Judgment

### A. Standard

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.*

11

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). In such a situation, there can be "no genuine issue as to any material fact," as "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted).

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323. However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the movant has carried his burden, the nonmoving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)) (internal quotation marks omitted). While the court is to view all evidence and factual inferences in a

12

light most favorable to the nonmoving party, *Samples*, 846 F.2d at 1330, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48.

### B.  Plaintiff's Negligence Claim

In order to prevail on her negligence claim, plaintiff must show:  (1) that defendants had a legal duty to conform to a standard of conduct raised by law for the protection of others against unreasonable risks of harm, (2) a breach of that standard, and (3) a causal connection between the breach and the resulting loss or damage to plaintiff. *Shortnacy v. N. Atlanta Internal Med., P.C.*, 252 Ga. App. 321, 325 (2001).  Causation, and the related issues of assumption of risk and comparative negligence, are generally matters for the jury to determine, rather than the court.  *Atlanta Affordable Hous. Fund Ltd. P'ship v. Brown*, 253 Ga. App. 286, 288 (2002).

### 1.  <u>Elements I & II:  Duty and Breach</u>

A driver has a legal duty to exercise reasonable caution while driving, which includes maintaining a diligent lookout to ensure that the road ahead of him is clear of traffic and other obstructions. *Brown v. Shiver*, 183 Ga. App. 207, 208 (1987).  Plaintiff has presented evidence that Ledford breached this duty by (1) swerving and possibly dozing while driving and/or (2) looking in his rearview

13

mirror rather than at the road in front of him at the time of the accident. Defendants do not dispute that this evidence creates a question of fact as to the first two elements of plaintiff's negligence claim. *See Banks v. Payne*, 213 Ga. App. 783, 784 (1994) ("the question as to the exercise of ordinary care is [generally] for the jury").

2. <u>Element III: Causation</u>

The Court likewise finds sufficient evidence in the record to suggest a causal connection between Ledford's negligence and Swinney's death, even in the absence of Edmondson's opinion. Although the investigation revealed no blood or tissue on Ledford's truck, part of Swinney's clothing was found lying near the truck where it came to rest approximately 618 feet away from the site of its initial impact with Swinney's car. (Stanley Dep. [111] at 31.) Officer Harper concluded from this fact that Ledford's truck likely struck Swinney's body. (Harper Dep. [111] at 54-57.) A reasonable jury might agree with this conclusion, particularly as defendants offer no credible alternative explanation for the presence of the clothing near Ledford's truck.

Furthermore, there is undisputed evidence that White, who was driving directly behind Ledford, hit Swinney's body. (PSMF [114] at ¶¶ 38-40.) Based on White's location, a reasonable jury might infer that Ledford's truck must have previously made contact with Swinney's

14

body.  Again, defendants do not provide a persuasive explanation as to how Ledford's truck would have missed Swinney's body when White, who was driving directly behind Ledford, hit it.[2]

Given the evidence in the record, the two cases cited by defendants in support of summary judgment are inapposite.  *See Berry v. Hamilton*, 246 Ga. App. 608 (2000) and *Dawkins v. Doe*, 263 Ga. App. 737 (2003).  In *Berry* and *Dawkins,* the courts granted summary judgment in wrongful death traffic collision cases because there was no evidence of negligence on the part of the motorists involved and barely enough evidence to raise a conjecture as to how the decedents died.  *Berry,* 246 Ga. App. at 609 and *Dawkins,* 263 Ga. App. at 739. In this case, defendants concede that there is an issue of fact as to Ledford's negligence, and there is sufficient evidence in the record to support a reasonable inference that Swinney died either as a result of being hit or thrown onto the roadway by Ledford's truck. (*See* PSMF [114] at ¶¶ 21-23, 30-31, 38-40 and Harper Dep. [111] at 30.)

As indicated above, questions regarding negligence in general, and causation in particular, must be resolved by the jury except in

---

[2]  There is no evidence whatsoever to support defendants' theory that Swinney was hit and killed prior to the accident involving Ledford's truck.  *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005)(speculative theories are not relevant to summary judgment).

15

"palpable, clear, and indisputable cases." *Atlanta Affordable Hous.*, 253 Ga. App. at 288. *See also Ontario Sewing Mach. Co., Ltd. v. Smith*, 275 Ga. 683, 687 (2002)("it is axiomatic that questions regarding proximate cause are 'undeniably a jury question' and may only be determined by the courts 'in plain and undisputed cases.'") (quoting *Atlanta Obstetrics & Gynecology Grp., P.A. v. Coleman,* 260 Ga. 569, 570 (1990)). This case does not fall into that category. Accordingly, the Court **DENIES** defendants' motion for summary judgment on plaintiff's negligence claim.

### C. Damages For Swinney's Pain And Suffering And Pre-Impact Fright And Shock

In addition to their causation argument, defendants contend that they are entitled to partial summary judgment on plaintiff's claim for damages on behalf of Swinney as a result of his pain and suffering and pre-impact fright and shock. (Defs.' Br. [111] at 16-17.) According to defendants, such damages are unavailable because there is no evidence that Swinney was either aware of the impending collision or alive when the accident occurred. (*Id.*) Plaintiff does not respond to defendants' argument on this point. Accordingly, summary judgment is warranted as to these damages. *See Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004)(Duffey, J.)("Failure to respond to the opposing party's summary judgment arguments regarding a claim constitutes an abandonment of that claim

16

and warrants the entry of summary judgment for the opposing party.")
and LR 7.1(B), NDGa. (failure to respond to a motion indicates lack
of opposition).

Moreover, the Court finds that defendants' argument as to this
particular category of damages is meritorious. Plaintiff has
presented no evidence that Swinney was aware of the impending crash
or that he did not die instantly. *See Byrd v. Wal-Mart Transp., LLC*,
2009 WL 3429562, at *5 (S.D. Ga. 2009) (Edenfield, J.) ("Georgia law
requires some evidence that the decedent[] actually anticipated the
collision before a recovery for pre-impact pain and suffering is
allowed."). For this additional reason, the Court **GRANTS** defendants'
motion for partial summary judgment as to plaintiff's claim for
damages arising from Swinney's pain and suffering and pre-impact
fright and shock.

### D. Negligence *Per Se*

Defendants also seek partial summary judgment on their defense
of comparative negligence. (Defs.' Br. [111] at 17-22.) Defendants
point out that Swinney's conduct on the morning of the accident--in
particular his drug and alcohol use--violated several Georgia
statutes. (*Id.*) As a result, defendants argue that they are
entitled to a ruling that Swinney is guilty of negligence *per se.*
(*Id.*)

17

## 1. Applicable Standard

The violation of a statute, ordinance or mandatory regulation that imposes a legal duty for the protection of others constitutes negligence *per se*. *Hubbard v. Dep't of Transp.*, 256 Ga. App. 342, 349-50 (2002). Assuming there is a statutory violation, negligence *per se* arises when (1) a person injured as the result of the violation falls within the class of persons the statute was intended to protect, and (2) the harm complained of is the harm the statute was intended to guard against. *Id.* In addition, in order to prevail on a claim or defense of negligence *per se*, there must be a causal connection between the negligence and the injury. *Id.* Even assuming that an injured plaintiff or a decedent is guilty of negligence *per se,* assessing the level of comparative negligence remains an issue for the jury. *Hill v. Copeland*, 148 Ga. App. 232, 233 (1978).

## 2. O.C.G.A. § 40-6-391

In support of their negligence *per se* argument, defendants first contend that Swinney's intoxication and drug use on the morning of the accident violated O.C.G.A. § 40-6-391. (Defs.' Br. [111] at 17-18.) That statute provides that:

> a person shall not drive or be in actual physical control of any moving vehicle while . . . [t]he person's alcohol concentration is [].08 grams or more at any time within three hours after such driving or being in actual physical

control from alcohol consumed before such driving or being
in actual physical control ended.

O.C.G.A. § 40-6-391(a)(5). It further prohibits a person from driving under the influence of "any amount of . . . a controlled substance." O.C.G.A. § 40-6-391(a)(6).

The purpose of the above statute is to protect drivers and pedestrians from motorists who are incapacitated by drugs or alcohol. *Love v. State*, 271 Ga. 398, 401-02 (1999). The Georgia legislature has determined that any person who drives in violation of the statute "constitutes a direct and immediate threat to the welfare and safety of the general public." O.C.G.A. § 40-5-55. Moreover, the legislature has concluded that "there is no level of illicit drug use which can be acceptably combined with driving a vehicle" because "the established potential for lethal consequences is too great." *Love*, 271 Ga. at 402.

Plaintiff does not contest the purpose of the statute, or that its violation would amount to negligence *per se*. Rather, plaintiff argues that O.C.G.A. § 40-6-391 is not applicable because there is no evidence that Swinney was "driv[ing] or . . . in actual physical control of a[] moving vehicle" when the accident occurred. O.C.G.A. § 40-6-391(a). *See also Carr v. State*, 169 Ga. App. 679, 680 (1984) (O.C.G.A. § 40-6-391(a) is only violated when a party is in control

19

of a moving vehicle). The Court agrees. Although the parties dispute Swinney's exact location, they both contend that he was outside of his vehicle at the time of the accident. (DSMF [111] at ¶¶ 18-19 and PSMF [114] at ¶ 19.) Thus, under any version of the facts, Swinney could not have been driving or in "actual control" of a moving vehicle when the accident occurred. Accordingly, the Court **DENIES** defendants' motion for summary judgment as to negligence *per se* under O.C.G.A. § 40-6-391.

3.    <u>O.C.G.A. §§ 40-6-202 and 40-6-203(a)(1)(I)</u>

Defendants next contend that Swinney was negligent *per se* for parking his vehicle in the right travel lane of I-285 in violation of O.C.G.A. §§ 40-6-202 and 40-6-203. (Defs.' Br. [111] at 18.) Sections 40-6-202 and 40-6-203 generally prohibit parking or leaving a standing vehicle on a roadway or highway. O.C.G.A. §§ 40-6-202 and 40-6-203(a)(1)(I). However, both statutes are modified by O.C.G.A. § 40-6-204, which limits their application to situations where the vehicle is not disabled "in such a manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position." O.C.G.A. § 40-6-204.

In this case, there is sufficient evidence to find that the qualification in O.C.G.A. § 40-6-204 is controlling. Construing the facts most favorably to plaintiff, Swinney's car broke down in the

20

far right travel lane of I-285 and he was unable to move the car prior to the accident. (PSMF [114] at ¶¶ 2-4, 12.) Under the circumstances, it is for the jury to decide whether Swinney's car was disabled "in such a manner and to such extent that it [wa]s impossible to avoid stopping and temporarily leaving" the car in the right travel lane of I-285. O.C.G.A. § 40-6-204. *See also Smith v. Nelson*, 123 Ga. App. 712, 718 (1971)(finding a jury question as to whether a disabled truck could have been driven off the road under the circumstances). Accordingly, the Court **DENIES** summary judgment on defendants' negligence *per se* claims under O.C.G.A. §§ 40-6-202 and 40-6-203(a)(1)(I).

### 4. <u>O.C.G.A. §§ 40-6-95-95, 40-6-96</u>

Finally, defendants contend that Swinney was negligent *per se* for violating two statutes that govern the conduct of pedestrians on the roadways: O.C.G.A. § 40-6-95 and O.C.G.A. § 40-6-96. Section 40-6-95 restricts a person "who is under the influence of intoxicating liquor or any drug to a degree which renders him a hazard" from walking upon any roadway or shoulder. O.C.G.A. § 40-6-95. Section 40-6-96 requires that "any pedestrian standing or striding along and upon a highway shall stand or stride only on the shoulder, as far as practicable from the edge of the roadway." O.C.G.A. § 40-6-96(c).

21

The record does not support summary judgment on negligence *per se* under either statute. Defendants have failed to show, as a matter of law, that the alcohol and cocaine in Swinney's system rendered him a "hazard" in violation of Section 40-6-95. Moreover, there is no evidence to suggest that Swinney wandered onto the highway in violation of Section 40-6-96. Based on the available evidence, it is more likely that Swinney's body was thrown onto the highway by Ledford's truck or another car. In addition, defendants have made no attempt whatsoever to show that Swinney was not "as far as practicable from the edge of the roadway" when he was struck and flung onto the highway. Accordingly, the Court **DENIES** summary judgment on defendants' negligence *per se* claims under O.C.G.A. §§ 40-6-95-95 and 40-6-96.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** defendants' Renewed Motion for Summary Judgment [111] and **SUSTAINS** defendants' Objection to the Affidavit of Harry Edmondson [118].

AO 72A
(Rev.8/82)

So ORDERED this <u>7th</u> day of November, 2011.


                                   <u>/s/ Julie E. Carnes</u>
                                   JULIE E. CARNES
                                   CHIEF UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)